1  Ian Wallach (SBN # 237849)
   The Law Offices of Ian Wallach, P.C.
2  5777 West Century Blvd., St. 750
3  Los Angeles, CA 90045
   T: 213.375.0000; F: 213.402.5516
4  Email: iwallach@wallachlegal.com

5  Attorneys for Plaintiffs,
   Pedro Martinez and
6  Juliette Mondragon de Martinez

7              **IN THE UNITED STATES DISTRICT COURT**

8          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9                        **EASTERN DIVISION**

10

11 | | |
   |---|---|
12 | Pedro Martinez and Juliette Mondragon de Martinez, | Civil Action No. 5:24-cv-2557 |
13 | Plaintiffs, | |
14 | v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
15 | County of San Bernardino; San Bernardino County Sheriff's Department ("SBSD"); Deena Pribble (in her individual capacity); Paul Matiasic (in his individual capacity); Josette Tracy (in her individual capacity); Brian Arias (in his individual capacity); Jonathan Womelsdorf (in his individual capacity); and DOES 1 – 10 (in their individual capacities), | |
16 | | |
17 | | |
18 | | |
19 | | |
20 | | |
21 | Defendants. | |

22

23

24

25

26

27

28

1
COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Pedro Martinez and Juliette Mondragon de Martinez, by and through their attorneys, the Law Offices of Ian Wallach, P.C., allege as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 *et seq*., and the Fourth and Fourteenth Amendments to the United States Constitution. Subject matter jurisdiction is premised on 29 U.S.C. §§ 1331 and 1343(a)(1), (2), (3), and (4), and the aforementioned statutory and Constitutional provisions. The ancillary state claims are brought pursuant to California Civil code Sec. 52.1, *et seq*.

2. The incidents alleged herein took place within the Counties of Los Angeles, Riverside, and San Bernardino. The Plaintiffs reside within the County of San Bernardino. The Defendants, upon information and belief, also reside in or exist within the County of San Bernardino. Defendant County of San Bernardino is located within this district. Defendant Sheriff's Department for the County of San Bernardino is located within this district.

## TIMELINESS

3. The conduct at issue took place between on or about January 22, 2019 and continued until December 11, 2023 during which period Plaintiff was wrongfully incarcerated (and labeled a child molester) and deprived of Constitutional Rights and suffered harm from the tortious conduct of Defendants.

4. As to the ancillary state claims, Plaintiff Pedro Martinez filed his state tort claim against Defendants on June 7, 2024. On June 18, 2024, Defendants rejected Mr. Martinez' claim and incorrectly determined that the claims were untimely and also incorrectly assigned a date of loss of January 22, 2019, rather than the applicable date of December 11, 2023. (See California Government Code Section 954.3).

5. As to the other ancillary state claims, Plaintiff Juliette Mondragon de Martinez filed her state tort claims against Defendants on June 7, 2024, to which Defendants did not respond. 180 days have passed since Ms. Mondragon de Martinez filed her claim.

COMPLAINT AND DEMAND FOR JURY TRIAL

6. This action is timely.

## INTRODUCTION

7. The profoundly disturbing tragedy suffered by Plaintiffs Pedro Martinez and Juliette Mondragon De Martinez could, absent exposure, effort, revision, and correction, happen to anyone.

8. After 22 years of marriage, and without any legitimate evidence and with overwhelming exculpatory evidence, Mr. Martinez – a law-abiding citizen who never had even as much as a parking ticket -- was arrested, charged with multiple counts of child sexual assault, publicly humiliated and demonized, and wrongfully prosecuted while being forced to suffer almost five years of incarceration until he was acquitted by a jury of all charges on December 11, 2023.

9. The entirety of the case was based on the absurd and fantastical claims of Magdalena Serna ("Ms. Serna"), a self-confessed opioid addict with a criminal history who had repeatedly made multiple extremely similar allegations against others, including two nearly identical allegations against others made during the year Mr. Martinez was arrested.

10. Ms. Serna's allegations were so impossible and fantastical that any prudent person or law enforcement officer would have investigated her background to determine their veracity rather than taken her word at face value.

11. Ms. Serna's allegations included bizarre and fantastical claims that Mr. Martinez had collected multiple children for group rapes that took place on a daily basis every Monday through Thursday over a several month period. It appears that – during this time – Ms. Serna was abusing the very witness she claimed was abused by Mr. Martinez. Evidence of her misconduct and abuse of I.R. was readily available to law enforcement, including Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, Defendant Deputy **Johnathan Womelsdorf**, and Defendant **Deena Pribble** (a prosecutor with the San Bernardino County District Attorney's Office). These Defendants, and others, intentionally chose to

3

not review such evidence, even when it was provided to them by Defense Counsel, in an effort protect the integrity of an empty, corrupt, and biased investigation. These Defendants told multiple parents that their children had been raped. They received accolades for their work in arresting Mr. Martinez. And once these Defendants learned that the allegations were untrue, rather than having the integrity to terminate the baseless prosecution against Mr. Martinez, they instead chose to attempt to preserve the integrity of the failed investigation and each other's reputations by pursuing the baseless claims against Mr. Martinez.

12. Even worse, they not only refused to review the overwhelming exculpatory evidence, but Defendant Detective **Brian Arias**, with the knowledge, support, and approval of Defendant **Deena Pribble**, fabricated evidence and gave false and perjurious testimony to a Court during a preliminary hearing and at trial.

13. These Defendants hid exculpatory evidence, coached witnesses, and rather than even review the overwhelming exculpatory evidence, sought to hide such evidence from the jury and/or preclude its presentation.

14. As a result, Mr. Martinez was incarcerated and labeled a child molester for almost five years. Plaintiffs were separated from each other during this awful time.

15. On December 11, 2023, a jury acquitted Mr. Martinez of all charges, but the damage had been done. Mr. Martinez has been ostracized from his community and suffers, naturally, the deep emotional distress that would naturally arise from such a horrible, avoidable, offensive, and constitutionally abusive tragedy.

## **PARTIES**

16. Plaintiff **Pedro Martinez** ("Mr. Martinez") lives in Hesperia, California. Mr. Martinez was wrongfully incarcerated from his arrest on or about January 22, 2019 until his release on December 11, 2023.

17. Plaintiff Juliette **Mondragon de Martinez** ("Ms. Martinez") lives in Hesperia, California. Ms. Martinez was deprived the company of her husband, Mr. Martinez, during his wrongful incarceration.

18. Defendant **County of San Bernardino** (**"County of San Bernardino"**) is a **municipal corporation** incorporated in the State of California. Defendant **County of San Bernardino** was responsible for the training, supervision, and discipline of individual Defendants and for the policies and practices regarding police investigations that were used in this case. Defendant **County of San Bernardino** was a "person" for purposes of Title 42 of the United States Code, Section 1983.

19. Defendant **San Bernardino County Sheriff's Department** ("SBCSD") is a police agency located within the County of San Bernardino and responsible for the training, supervision, and discipline of individual Defendants and for the policies and practices regarding police investigations that were used in this case, and the employer of Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant Deputy **Johnathan Womelsdorf**.

20. At all relevant times, Defendant **Deena Pribble** was a prosecutor employed by the San Bernardino District Attorney's Office ("SBDAO") and resident within the County of San Bernardino.

21. Upon information and belief, Defendant **Deena Pribble** was also working with and for Defendant **Paul Matiasic**.

22. At all relevant times, Defendant **Paul Matiasic** was an attorney residing within the State of California who maintained an office in Riverside County.

23. At all relevant times, Defendant Detective **Josette Tracy** was employed by the SBCSD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of County of San Bernardino and the State of California. Upon information and belief, she is entitled to indemnification under statute and by contract. She is sued in her individual capacity.

24. At all relevant times, Defendant Detective **Brian Arias** was employed by the SBCSD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs,

and usage of County of San Bernardino and the State of California. Upon information and belief, he is entitled to indemnification under statute and by contract. He is sued in his individual capacity.

25. At all relevant times, Defendant Deputy **Jonathan Womelsdorf** was employed by the SBCSD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of County of San Bernardino and the State of California. Upon information and belief, he is entitled to indemnification under statute and by contract. He is sued in his individual capacity.

26. Defendant **DOES 1 – 5** are individuals whose names are not yet known to Plaintiffs and are employed by the SBCSD, who hold supervisory roles over the conduct and actions of Defendant Deputy **Jonathan Womelsdorf**, Defendant Detective **Brian Arias** and/or Defendant Detective **Josette Tracy** and are responsible for their training and to ensure their compliance with that training and their compliance with **SBCSD** policies.

27. Defendant **DOES 6-10** are individuals whose names are not yet known to Plaintiffs and are employed by the SBCSD and who were part of the investigation of Mr. Martinez along with Defendant Deputy **Jonathan Womelsdorf**, Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy**

## STATEMENT OF FACTS

28. On January 22, 2019, Defendant **SBCSD** received a courtesy report from the Los Angeles County Sheriff's Department ("LASD") regarding suspected child abuse. Witness Magdalena Serna ("Ms. Serna") reported to LASD that her girlfriend's son, I.R. (age 6), had been sexually assaulted at Maple Elementary School by Mr. Martinez, the school custodian. She stated that Mr. Martinez systematically raped I.R. and three other boys repeatedly and over several months at the school. LASD did not interview I.R. or the other boys named by Ms. Serna.

**Magdalena Serna's Relationship with I.R.**
**and Prior Allegations of Sexual Abuse**

29. Upon information and belief, in January 2019, Ms. Serna had been dating I.R.'s mother, Alba Rosa ("Ms. Rosa") for a couple of years. The two met in a veteran's women's home in Hesperia, California. At the time they began dating, Ms. Rosa's husband had just died and Ms. Rosa's children, I.R. and M.R.[1] were living in foster care. Ms. Serna met I.R. and M.R. during their periodic visits with Ms. Rosa.

30. In January 2018, I.R. and M.R. were returned to Ms. Rosa's custody. Later, both Ms. Rosa and Ms. Serna would report to the Department of Child and Family Services ("DCFS") that I.R. had been sexually abused while in foster care.

31. Upon information and belief, and per reports and testimony of Ms. Serna, I.R. began exhibiting strange behaviors upon his return to Ms. Rosa's custody. I.R. was inappropriately touching his little brother M.R., including touching his brother's buttocks and inserting objects such as pencils, toys, knives, as well as his fingers inside his brother's anus. I.R. also requested that other children rub and touch his bottom. During the spring of 2018, Ms. Rosa's friend, Essence Smith ("Ms. Smith"), observed I.R. attempting to insert a pencil into M.R.'s bottom. She immediately contacted Ms. Rosa and Ms. Serna regarding this behavior as she suspected previous sexual abuse on one or both children. Months later, Ms. Smith observed her son rubbing I.R.'s bottom at I.R.'s direction. Ms. Smith's son reported to her that I.R. had asked him to touch his bottom on previous occasions. Again, Ms. Smith informed Ms. Rosa and Ms. Serna.

32. Upon further information and belief, in or about Summer 2018, Ms. Serna moved to Rowland Heights in Los Angeles, California. Ms. Rosa remained in Hesperia and would stay at Ms. Serna's home with her children every weekend. Ms. Serna reported that I.R. acted out in her home. Ms. Serna reported that, among other things, I.R. wiped feces on her belongings, vandalized her furniture with a knife,

---

[1] I.R. and M.R. are minors and their full names are being withheld from this complaint.

urinated on furniture, and vandalized her car. Ms. Serna also reported that she noticed that M.R. would flinch while she was changing his diaper. Ms. Serna surmised that I.R. was sexually abusing M.R. and took it upon herself to interview both children. Ms. Serna claimed that I.R. (age 6) admitted to inserting items into his brother's anus and that M.R. (age 3) informed her that I.R. had been sexually molesting him.

33. Upon information and belief, Ms. Serna was abusing and beating I.R. on a regular basis during this time.

34. Ms. Serna has testified that every weekend, beginning in or about September 2018 through January 22, 2019, Ms. Serna would question I.R. about molestation.

35. Upon information and belief, Ms. Serna considers herself very knowledgeable in the area of sexual abuse, child molestation, and rape.

36. While the prosecution of Mr. Martinez was ongoing, Ms. Serna gave testimony that she had been molested and raped repeatedly throughout her life, including by her brothers, uncles, peers, and brother-in-law.

37. In March 2012, Ms. Serna accused a family friend of sexually molesting her then 4-year-old son, by, among other things, touching his butt. Ms. Serna refers to herself as a "survivor," and testified that, since the age of 19, she has been reading and watching material on sexual molestation and pedophilia. She claims to know the signs of sexual abuse and molestation.

## Ms. Serna Claims I.R. Reported Sexual Abuse

38. In response to repeated questioning by Ms. Serna about molestation, in Fall 2019, Ms. Serna claims that I.R. stated that he was being molested by three boys at Maple Elementary School – X.M., S.S., and A.M.[2] Per Ms. Serna, this led Ms. Serna to believe that an adult male at the school had molested all four boys.

39. On or about January 20, 2019, Ms. Serna claimed that she questioned I.R. about which school employee had abused him. Ms. Serna testified that she searched the

---

[2] Minors are identified in this complaint only by initials.

1    school's website for a roster of male employees and began naming people. Ms.

2    Serna testified that I.R. appeared to recognize the name of the school janitor, Pedro

3    Martinez.

4    40. Ms. Serna claimed that over a seven (7) hour period, from the evening until the

5    early morning, that I.R. explained in detail how Mr. Martinez had systematically

6    sexually abused and raped him and three other boys, X.M., S.S., and AM.,[3] for

7    months.

8    41. Upon information and belief, I.R. has learning challenges and does not, and did not

9    during relevant time periods, speak for extended periods of time or using extended

10    sentences and could not have made this alleged 7-hour detailed disclosure.

11    42. Ms. Serna claimed that I.R. made the following allegations:

12        o  Mr. Martinez took groups of boys, including I.R., to various classrooms
13           to sexually assault them;

14        o  Mr. Martinez also sexually abused children in the janitor's closet;

15        o  Mr. Martinez showed I.R. videos of him engaging in sex acts with the
16           other boys named;

17        o  Mr. Martinez had a "routine" wherein he would show the boys videos of
18           children being assaulted, sodomize them, and then forced them to orally
19           copulate him;

20        o  Mr. Martinez subjected the children to this "routine," including sodomy,
21           every weekday, except Fridays, for several months, and that he "gave
22           them Friday's off;"

23        o  Mr. Martinez physically abused the children by kicking and hitting them;

24        o  Mr. Martinez forced the boys to beat each other up to hide evidence of
25           sexual assault and physical abuse;

26        o  Mr. Martinez used a color-coding system when sexually assaulting the
27           boys;

28

---

[3] *Id.*

- o Mr. Martinez used a "Mickey Mouse" tickler (which Ms. Serna described as a vibrator used to sexually abuse the children);
- o Mr. Martinez would say in a threatening voice that he was "Mr. Quarters;"
- o Mr. Martinez gave the children candy and quarters;
- o Mr. Martinez knew whether I.R. and the other boys were located throughout the day. He would send boys in the bathroom to beat up I.R.;
- o Mr. Martinez told the children he was an "escape artist" and would show them movies of people escaping;
- o Mr. Martinez told the kids he could see them everywhere and was also watching; and
- o Mr. Martinez intentionally chose children of different races because that would mean their parents would not speak to one another and learn of the abuse.

43. The claims of Ms. Serna were simply too fantastical to be considered accurate by a responsible person, and claims concerning activities that happened at school were easily disprovable.

44. Ms. Serna contacted the Los Angeles County Sheriff's Department ("LASD") two days later, on January 22, 2019.

45. LASD Deputies Connors and Carlo responded to Ms. Serna's home in Rowland Heights on the morning of January 22, 2019.

46. Ms. Serna explained to the LASD Deputies that, over a seven (7) hour period, beginning on or about January 20, 2019, I.R. disclosed to her that Mr. Martinez had systematically sexually abused and raped I.R. as well as three of I.R.'s classmates – A.M., S.S., and X.M.

47. Ms. Serna reported, among other things, that Mr. Martinez orally and anally raped I.R. and the other children in a backroom in the school cafeteria, that Mr. Martinez

showed I.R. violent pornography, and showed I.R. photos of him sexually abusing A.M., S.S., and X.M.

48. LASD Deputies attempted to interview I.R. Deputy Connors testified that I.R. was not responsive to questions and did not appear to be in distress.

49. LASD escorted I.R. and his mother to PIH Health Hospital in Whittier for a Sexual Assault Response Team (SART) exam.

50. The results of I.R.'s SART exam were negative for any signs or indications of sexual abuse.

51. LASD Deputy Connors drafted a "suspicious circumstances possible child abuse" report based on LASD's inability to confirm the elements of a crime. LASD forwarded the report to SBCSD as the misconduct was alleged to have occurred in Hesperia.

**San Bernardino County Sheriff's Deputy Jonathan Womelsdorf Interviews Three Children. All Deny Abuse. San Bernardino County Sheriff's Deputy Jonathan Womelsdorf Then Coerces Six-Year-Old X.R To Give an Affirmative Answer. The Answer in No Way Corroborated Ms. Serna's Statements**

52. On or about January 22, 2019, Defendant Deputy **Jonathan Womelsdorf** received the courtesy report from LASD. **Contrary to established protocol,** Deputy **Jonathan Womelsdorf** did not consult with anyone from the SBCSD Crimes Against Children Unit or interview I.R.

53. Deputy **Jonathan Womelsdorf** did not arrange for forensic interviews by qualified forensic professionals of I.R. or other children named by Ms. Serna.

54. Instead, Defendant Deputy **Jonathan Womelsdorf** conducted an interview of Ms. Serna via telephone. The conversation is recorded.

55. Based only on Ms. Serna's bizarre, fantastical, and easily disprovable claims, Deputy **Jonathan Womelsdorf** went to Maple Elementary School to interview A.M., S.S., and X.M.

56. Despite intense leading and repetitive questioning by Defendant Deputy **Jonathan Womelsdorf**, which was wholly inconsistent with the minimal training (4 hours) that Defendant Deputy **Jonathan Womelsdorf** received from Defendant SBCSD, A.M., S.S., and X.M. repeatedly denied any abuse by anyone (including Mr. Martinez).

57. The interview of X.M. by Defendant Deputy **Jonathan Womelsdorf** was recorded and exemplifies exactly the opposite of the minimal training received by Defendant Deputy **Jonathan Womelsdorf**. Defendant Deputy **Jonathan Womelsdorf** only asked leading questions, refused to accept denials, conveyed the threat of his partner that they would "call [his] dad" if he continued to deny abuse; suggested the answer to every question, and, when the 6-year-old child began to answer "yes" to claims that concerned sexual assault, but in no way comported with Mr. Serna's allegations, Defendant Deputy **Jonathan Womelsdorf** rewarded X.M, by offering him candy. This was exactly contrary to the widely accepted forensic child interviewing techniques and the minimal (4 hours) portions of the California Commission on Peace Officer Standards and Training ("POST") training on child interview techniques provided to Defendant Deputy **Jonathan Womelsdorf** by Defendant SBCSD.

58. X.M. eventually succumbed to Defendant Deputy **Jonathan Womelsdorf**'s manipulation as a result of the repetitive, suggestive questioning, use of offers of candy and praise, and discouragement of denials.

59. Based solely on Ms. Serna's fantastical allegations of abuse and Defendant Deputy **Jonathan Womelsdorf**'s report that X.M. disclosed abuse – of which Defendant Deputy **Jonathan Womelsdorf**'s recorded interview of X.M. was never reviewed by Defendant Detective Josette Tracy or any SBCSD supervisor or officer -- SBCSD obtained a warrant for Mr. Martinez' arrest.

**SBCSD Arrests and Interrogates Mr. Martinez**

60. Defendant Detective **Josette Tracy**, a member of the Crimes Against Children Unit of the SBCSD, was appointed lead detective on the case.

61. Defendant Detective **Josette Tracy** has never reviewed the recording of Deputy Womelsdorf's interview of X.M.

62. Defendant Detective **Josette Tracy** never interviewed I.R.

63. Defendant Detective **Josette Tracy** testified as follows during Mr. Martinez' criminal trial:

- o When a child discloses abuse, Defendant Detective **Josette Tracy** assumes it is true and no evidence could establish otherwise;

- o Whether a child is coerced during his/her disclosure of abuse is of no concern to Defendant Detective **Josette Tracy**;

- o The circumstances of a child's disclosure of abuse are of no concern to Defendant Detective **Josette Tracy**;

- o There is no need or reason to review the work of any subordinates, including reviewing Defendant Deputy **Jonathan Womelsdorf**'s interview of X.M., because he is a Sheriff's deputy. On that basis, Defendant Detective **Josette Tracy** knows he complied with training; and

- o It is important for Defendant Detective **Josette Tracy** to protect the integrity of fellow officers.

64. Based on Defendant Deputy **Jonathan Womelsdorf**'s communications with Ms. Serna and Defendant Deputy **Jonathan Womelsdorf**'s statement that X.M. disclosed abuse, Defendant Detective **Josette Tracy**, along with SBCSD Defendant Detective **Brian Arias**, went to Mr. Martinez' home. Mr. Martinez answered the door in his pajamas. Defendant Detective **Josette Tracy** and Defendant Detective **Brian Arias** informed Mr. Martinez that he had been accused

13

of inappropriate behavior and asked him to come to the station. Mr. Martinez complied.

65. That was the last time Mr. Martinez would see his home or touch his wife for almost five (5) years.

66. Defendant Detective **Josette Tracy** and Defendant Detective **Brian Arias** informed Mr. Martinez that numerous children had alleged sexual abuse against him, and falsely stated that video evidence corroborated the allegations. There was no such video evidence.

67. Mr. Martinez had never met I.R. and had no idea who I.R. was. (I.R. was not able to subsequently identify Mr. Martinez in a photograph at the CAC interview discussed below or at trial).

68. Defendant Detective **Josette Tracy** and Defendant Detective **Brian Arias** interrogated Mr. Martinez in an attempt to coerce his confession to the bizarre and fantastical claims asserted by Ms. Serna. The interview was recorded.

69. Mr. Martinez fervently denied the allegations and begged for forensic testing and analyses.

### SBCSD'S Investigation

70. All forensic testing performed by Defendant SBCSD further established Mr. Martinez' innocence.

71. The January 22, 2019 CSI Analysis of the Janitor's Closet where the alleged assaults took place resulted in no findings of blood or semen.

72. The January 22, 2019 SART Exam of I.R resulted in "no findings/normal exam."

73. The January 25, 2019 SART Exam of X.M. resulted in "no findings/normal exam."

74. One year after the arrest, Defendant SBCSD performed a DNA analysis of the children's clothing taken on the day of the alleged assault. The results were negative for semen, blood, and DNA.

75. A forensic analysis was performed on Mr. Martinez's phone. On January 23, 2023, Defendant Deputy **Jonathan Womelsdorf** authored and submitted a request for a search warrant and supporting affidavit for the search and seizure of Mr. Martinez' person and residence to include: "electronic storage devices, including cellular phones, laptop and desktop computers, and hard drives." The scope of the warrant was limited to photos, videos, or audio files depicting the sexual abuse or exploitation of children; diaries or other records of child sex partner(s) such as names of children, types of sexual acts with children, and dates of sexual acts with children. That analysis resulted in a finding of no photos, videos, or audio recordings depicting exploitation of children or records of sexual acts and/or communications with children or photos or videos of any child.

## Children's Assessment Center ("CAC")
## Conducts Forensic Interviews of Children

76. Children's Assessment Center ("CAC") social workers, at Defendant Detective **Josette Tracy**'s request, conducted forensic interviews of I.R., X.M., S.S., and A.M.

77. Again, S.S. and A.M. denied abuse.

78. At the CAC interview, I.R. denied sexual abuse. In fact, at times during his interview, he refers to Ms. Serna as opposed to Mr. Martinez.

79. Following a series of suggestive and repetitive questions, upon information and belief, at the request of Defendant Detective **Josette Tracy** and Defendant Detective **Brian Arias**, I.R. states that Mr. Martinez brushed his "back" with the back of his hand. I.R's statements did not – in any way – align with the statements purportedly made by I.R. to Ms. Serna.

80. Toward the end of the interview, the social worker Rosie Ochoa is clearly frustrated at I.R.'s failure to "disclose." Ms. Ochoa exited the room to speak with

SBSD Deputies and other social workers while another social worker occupied I.R. After several minutes, Ms. Ochoa returned to the interview room and suggested that she and I.R. go under the table. While on the floor, she attempted to get statements from I.R. regarding Mr. Martinez. I.R. was not responsive to her. While under the table, I.R., who is clearly wanting to leave the interview, agrees with Ms. Ochoa's suggestion that Mr. Martinez showed him a video with private parts.

81. At the CAC interview, X.M. denied abuse. Subsequently, following a series of suggestive, repetitive, demanding questions, upon information and belief, at the request of Defendant Detective **Josette Tracy** and Defendant Detective **Brian Arias**, X.M. answers in the affirmative to a question related to abuse. However, his statement starkly contradicted that provided to Defendant Deputy **Jonathan Womelsdorf**.

82. Neither I.R.'s nor X.M.'s statements resemble remotely the allegations asserted by Ms. Serna.

### **SBCSD Refusal to Investigate Ms. Serna**

83. Had SBCSD detectives run a simple background check on Ms. Serna, detectives would have discovered that:

- o In 2010, Ms. Serna had been arrested and charged with felony elder abuse. She later settled for a violation of Penal Code section 242, battery;
- o In March 2012, Ms. Serna reported that her son, then age four (4) had been sexually abused by a male family friend; and
- o Since 2002, Ms. Serna had been a party to multiple domestic violence restraining order petitions.

84. Long before trial, defense counsel was able to obtain DCFS records (which had always been available to SBCSB detectives, including Defendant Detective **Josette**

**Tracy**, Defendant Deputy **Jonathan Womelsdorf,** and Defendant Detective **Brian Arias**). SBCSB detectives had never sought such records.

85. On or about December 6, 2022, Defense Counsel to Mr. Martinez provided Defendant **Deena Pribble** with the DCFS records that had always been available to the Defendant **Deena Pribble**.

86. Defendant **Deena Pribble**, in turn, provided, or should have provided, such records to Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf,** and Defendant Detective **Brian Arias**.

87. Had Defendant **Deena Pribble**, Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf** or Defendant Detective **Brian Arias** ever reviewed the DCFS records provided to them by Defense Counsel and always available to Defendant **Deena Pribble**, Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf** or Defendant Detective **Brian Arias**, they would have ascertained that:

   o Ms. Serna has a long history of alleging molestation and rape against any number of men throughout her life;

   o Ms. Serna made approximately ten (10) prior similar allegations against others;

   o Ms. Serna made two (2) identical allegations against the temporary foster parents of I.R. *in the year prior to making the allegations against Mr. Martinez*;

   o Ms. Serna was arrested and charged in 2020, a year after Mr. Martinez' arrest, for felony child abuse against I.R. and his little brother M.R.

   o Ms. Serna was arrested and charged in 2020 with contributing to the delinquency of a minor;

   o I.R. claimed Ms. Serna had repeatedly physical and emotionally abused him;

- o Mr. Serna and/or I.R.'s mother had accused I.R.'s foster parents of sexually abusing I.R.;
- o DCFS social workers and law enforcement officers stated that Ms. Serna is manipulative and controlling, particularly with I.R. and his mother; and
- o Mr. Serna reported that I.R. is "the devil" and "a liar" and that she "wishes he was dead."

88. On or about March 8, 2022, counsel for Mr. Martinez provided Defendant **Deena Pribble** with records from I.R.'s mother's Petition for Separation against Ms. Serna.

89. Had Defendant **Deena Pribble**, Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf** or Defendant Detective **Brian Arias**, ever reviewed the family court records provided to them by defense counsel and always available to Defendant **Deena Pribble**, Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf** or Defendant Detective **Brian Arias**, they would have ascertained that:

- o The Court permanently terminated I.R.'s mother's parental rights as to both I.R. and his little brother based on her refusal to move out of Ms. Serna's home; and
- o Ms. Serna requested that I.R.'s mother reimburse her for damages she claimed I.R. caused to her home and personal property;

90. As discussed in greater detail below, related civil actions *Billy Roe, et al. v. Hesperia Unified School District, et al.,* Case No. CIVDS1904175 and *X.M. v. Hesperia School District, et al.,* Case No. CIVDS1907602 ensued.

91. Defense Counsel in the criminal matter against Mr. Martinez obtained the videos and deposition transcripts of Ms. Serna (and other witnesses) and provided them to Defendant **Deena Pribble** on a rolling basis from approximately February 11, 2022 to May 8, 2023.

92. Defendant **Deena Pribble** refused to view the videos of the depositions or review the transcripts of the deposition of Ms. Serna.

93. Defendant Detective **Josette Tracy** refused to view the videos of the depositions or review the transcripts of the deposition of Ms. Serna.

94. Defendant Deputy **Jonathan Womelsdorf** refused to view the videos of the depositions or review the transcripts of the deposition of Ms. Serna.

95. Defendant Detective **Brian Arias** refused to view the videos of the depositions or review the transcripts of the deposition of Ms. Serna.

96. Had Defendant **Deena Pribble**, Defendant Detective **Josette Tracy**, Defendant Deputy **Jonathan Womelsdorf**, and/or Defendant Detective **Brian Arias** viewed the videos of the depositions or reviewed the transcripts of the deposition of Ms. Serna, they would have ascertained that:

- o Ms. Serna claimed that her abuse started when she was still in diapers and that it has been a "revolving door" of abuse ever since. She claimed sexual abuse against uncles, brothers, her brother-in-law, a military peer, and others;

- o In March 2012, she reported to LASD that a family friend had molested her then 4-year-old son;

- o Ms. Serna has a long history of drug abuse (opioids) and is a self-admitted opiated addict;

- o Ms. Serna's allegations changed, becoming more fantastical and bizarre;

- o Ms. Serna claimed she "wanted a stage" to profess her allegations against Mr. Martinez; and

- o Ms. Serna openly testified that she would hide purported supporting evidence such as an alleged recording of I.R.'s alleged seven-hour recitation of abuse if ordered to produce it by a court.

97. In January 2020, about one year after reporting I.R.'s alleged abuse, Ms. Serna was arrested and criminally charged with child abuse against I.R. and M.R.

19

98. I.R. reported to DCFS that Ms. Serna had physically abused him numerous times, threatened his life, and emotionally abused him.

99. I.R. reported hitting and choking by Ms. Serna.

100. The dependency court ordered the children removed from Ms. Rosa and Ms. Serna's care.

101. Upon information and belief, Ms. Serna had been physically abusing I.R. (and his little brother) during the months Ms. Serna claims Mr. Martinez abused him.

102. I.R.'s alleged behavior in her home (specifically destroying Ms. Serna's items) and his complaints of abuse over the years corroborates this timeline.

103. In fact, Ms. Rosa reported in pleadings dated 2022 and 2023 that Ms. Serna was dangerous and physically abused everyone in the home.

104. During the criminal trial of Mr. Martinez, when asked, "Who is Magdalena?," I.R. responded, "My other abuser." I.R. further testified that he was afraid of Ms. Serna.

105. When Ms. Serna was asked at trial, while under oath, whether on January 20, 2019 (the night of the alleged 7-hour disclosure by I.R.) I.R. attempted to tell his mother that she (Ms. Serna) was abusing him, Ms. Serna responded, "I don't recall."

**Personal Injury Attorney Paul Matiasic**

106. Within a day of Mr. Martinez' arrest, Ms. Serna contacted a personal injury lawyer – Defendant **Paul Matiasic** – and, *pursuant to Ms. Serna's sworn testimony at trial*, conditioned Defendant **Paul Matiasic**'s representation of I.R. against the school district and Mr. Martinez on Defendant **Paul Matiasic**'s bringing a news crew to her home to cover Mr. Martinez' arrest.

107. In violation of California Rule of Professional Conduct Rule 3.6(a), Defendant **Paul Matiasic** brought an ABC News Crew to Ms. Serna's home where Anchor Jory Rand made, and ABC aired, a savage smear story based solely on Mr. Serna's allegations.

108.   In violation of California Rule of Professional Conduct Rule 3.6(a), Defendant **Paul Matiasic** appears in the story stating that the school allowed Mr. Martinez to systematically rape children and must pay.

109.   Upon information and belief, in addition to coordinating the ABC news story, and at the direction of Defendant **Paul Matiasic**, Ms. Serna reached out to parents of other children, informing them that Mr. Martinez had molested their children as well.

110.   Per Ms. Serna's testimony at trial, and in violation of California Rule of Professional Conduct Rule 7.3 and in further violation of the Consumer Attorneys of California Guiding Principle No. 4, Ms. Serna, at Defendant **Paul Matiasic**'s direction, solicited parents of other children and Maple Elementary and directed them to Defendant **Paul *Matiasic*** to join the lawsuit against the Hesperia Unified School District and Mr. Martinez.

111.   Shortly thereafter, Defendant **Paul Matiasic** also took up representation of S.S. and A.M., despite their repeated denials of abuse.

112.   Defendant **Paul Matiasic** then paid for flight tickets for S.S. and A.M. to meet a special, unidentified "therapist" in San Francisco who convinced S.S. and A.M. that they had been assaulted and named them in I.R.'s civil trial against the school district and Mr. Martinez.

113.    Audio recordings of law enforcement officer's communications with these guardians confirm law enforcement's knowledge of Ms. Serna's attempts to recruit other people for a lawsuit against the school district.

114.   Defendant **Paul Matiasic**'s claims asserted on behalf of S.S. and A.M. in the related civil action have been dismissed due to lack of evidence.

115.   Defendant **Paul Matiasic**'s claims asserted on behalf of I.R. are scheduled to be addressed at trial in January 2025.

116. Upon information and belief, Defendant **Paul Matiasic** communicated with Defendant **Deena Pribble** prior to and throughout the criminal trial against Mr. Martinez.

117. Defendant **Deena Pribble** refused to produce her communications with Defendant **Paul Matiasic** to Defense Counsel before and during the criminal trial.

118. Defendant **Paul Matiasic**, after being served with a subpoena to attend trial, retained attorney Alan Jackson to quash the subpoena. Upon information and belief, Defendant **Paul Matiasic** – *the only person other than Ms. Serna to have purportedly spoken with I.R. after the alleged assaults* – intentionally evaded service of a subpoena to appear for the criminal trial.

119. At trial, I.R. testified that Defendant **Paul Matiasic**, with the assistance of a therapist, "helped [I.R.] to remember" that he had been abused sometime prior to trial.

**Defendant Deena Pribble Performs a Biased Investigation Including Having Undisclosed Meetings with Witnesses and Intentionally Refusing to View Evidence Establishing Mr. Martinez's Innocence**

120. On January 25, 2019, the San Bernardino County District Attorney's Office ("SBCDA") filed a criminal complaint against Mr. Martinez alleging:

     o  a violation of Penal Code section 288.7(a) against I.R.;

     o  a violation of Penal Code section 288.7(b) against I.R.;

     o  a violation of Penal Code section 288.7(a) against X.M.;

     o  a violation of Penal Code section 288.7(b) against X.M.; and

     o  a violation of Penal Code section 288.2(a)(1).

121. The Complaint was based solely on Ms. Serna's statements. I.R. did not allege the charges asserted nor was he ever interviewed by any employee of the SBSD or SBCDA.

122.   On January 30, 2019, Defendant **Deena Pribble** held a meeting at the Victorville District Attorney's Office with parents/guardians of the named complaining witnesses as well as the parents/guardians of children who denied abuse. Defendant Detective **Josette Tracy** was also present. In the days following Mr. Martinez' arrest, law enforcement had several contacts with the parents/guardians of each child. These parents/guardians were told that Defendant **Deena Pribble** would cover what to discuss and not discuss about the case and about certain "dos" and "don'ts."

123.   Defendant **Deena Pribble** refused to produce any discovery concerning this meeting, including who was present. Defendant **Deena Pribble** represented to the Court that this was a "meet and greet" and that she was under no obligation to disclose any information concerning the meeting.[4]

124.   Upon information and belief, Ms. Serna attended the January 30, 2019 meeting. At that time, Ms. Serna had already retained Defendant **Paul Matiasic** to represent I.R. against the Hesperia School District and Mr. Martinez and was in the process of recruiting other parents to join a lawsuit.

125.   Within a week of Defendant **Deena Pribble**'s January 30, 2019 meeting with parents/guardians of children, including those of children who denied abuse, held at the office of the San Bernardino District Attorney, the parents/guardians of A.M and S.S. joined the related civil lawsuit against Mr. Martinez. Their civil claims have since been dismissed on summary judgement based on a lack of evidence.

126.   Defendant **Deena Pribble** acted in an investigative capacity when she led and participated in a meeting with parents/guardians of both named complaining witnesses and witnesses who previously denied abuse.

---

[4] During the course of this case, DDA Pribble also met with witnesses in her office but refused to produce statements to the defense.

127.   Defendant **Deena Pribble**'s investigation of Mr. Martinez was biased, and she actively avoided reviewing all of the substantial evidence that established Mr. Martinez's innocence.

128.   Defendant **Deena Pribble**'s investigation of Mr. Martinez was biased and unconstitutionally invasive against Mr. Martinez's rights to due process, exemplified by Defendant **Deena Pribble**'s instruction to potential witnesses on the "Dos and Don'ts" regarding future conduct (which, upon information and belief, included responding to inquiries of Defense Counsel and investigators).

129.   Defendant **Deena Pribble** committed multiple *Brady* violations by refusing to turn over discovery or any information related to the meeting.[5]

### DDA Pribble Abdicates Her Role as District Attorney and Acts at Times to Further the Financial Interests of Defendant Paul Matiasic and I.R. and X.M.

130.   Upon information and belief, prior to and during trial, DDA Pribble regularly communicated with Defendant **Paul Matiasic**.

131.   DDA Pribble refused to produce discovery regarding her communications with Mr. Matiasic, claiming that there was no discoverable *Brady* evidence.

132.   I.R. stated in deposition and at trial that Defendant **Paul Matiasic** and a therapist arranged by Defendant **Paul Matiasic**, named "Daniella," informed I.R. that he had been molested by Mr. Martinez and that Daniella helps him remember what happened.

133.   During trial, at Defendant **Deena Pribble**'s prompting, I.R. stated for the first time that he had been touched by Mr. Martinez on the penis. I.R. did not know the date, time, or circumstances of the purported incident, but verified that Mr. Matiasic and Daniella helped him to remember what happened.

---

[5] It has come to the attention of Mr. Martinez' counsel that the DDA Pribble has repeatedly, in other criminal cases, refused to disclose witness statements or produce discovery related to meetings she refers to as "meet and greets." Such conduct violates the due process rights of defendants and violates a prosecutor's ethical obligations set forth in California Rule of Professional Conduct 5.110.

134.   Upon information and belief, Defendant **Deena Pribble** was aware that I.R. would make this response, having either coached I.R. or received a statement from someone who had, and did not turn this statement over to the defense prior to eliciting it as testimony at trial.

135.    On information and belief, Defendant **Paul Matiasic** *hired a therapist to convince a young boy, prior to trial, that four years prior he was the victim of sexual assault*, in order to secure a criminal conviction against Mr. Martinez that would be binding in the related civil action.

136.   On information and belief, Defendant **Paul Matiasic** and Defendant **Deena Pribble** did so because they knew that this further strengthened the civil case and in turn, would generate money for Defendant **Paul Matiasic** and I.R.

137.   On information and belief, Defendant **Deena Pribble** knew of and facilitated witness tampering and Defendant **Paul Matiasic**'s financial endeavors.

138.   Upon information and belief, Defendant **Deena Pribble** was provided with I.R.'s new assertion that Mr. Martinez touched his penis prior to trial but did not disclose that to defense counsel.

139.   At trial, Defendant **Deena Pribble** proposed that the school administration, including teachers, cafeteria workers, the principal, and the school police officer had conspired to protect Mr. Martinez by giving false testimony. Upon information and belief, this is Defendant **Paul Matiasic**'s theory against the school district in the parallel civil action.

140.   Upon information and belief, Defendant **Deena Pribble**, in promoting Defendant **Paul Matiasic**'s argument that the school district was financially responsible for damages, abdicated her role as prosecutor in her efforts to secure a conviction in order to strengthen Defendant **Paul Matiasic**'s chances of prevailing in the civil case against the school district.

**Defendant Deena Pribble and Defendant Detective Brian Arias Misrepresent the Contents of Mr. Martinez' Phone to The Court During the Preliminary Hearing. Defendant Detective Brian Arias Did So Under Oath**

141.   On February 5, 2019, SBCSD forensically searched Mr. Martinez' devices (his phone and iPad).

142.   None of the items listed in the search warrant were located Mr. Martinez' electronic devices.

143.   This proved challenging for a law enforcement agency that had already committed to a determination of guilt: the forensic results were all negative thus far and the children denied and/or made contradictory statements that in no way resembled those of Ms. Serna, whose statements provided the basis for the arrest and search warrants.

144.   Detective Arias, using a Cellebrite Report, reviewed Mr. Martinez' phone search history. He noted that Mr. Martinez had several internet searches for adult porn sites as well as sites for sports, shopping, cars, and hardware. Detective Arias found that on July 4 and July 13, 2018, months prior to the alleged assaults, the user searched for cartoon pornography and bestiality. None of the images linked to these sites were saved to the phone.

145.   Additionally, the Cellebrite revealed that multiple images were the result of single searches and viewed, if at all, for mere seconds. This was confirmed during trial by Stephen Cvengros who performed the Cellebrite extraction. In the simplest terms, *no images were saved on the phone, all images had been viewed for less than two seconds each, and no images were of child pornography.*

146.   On March 5, 2020, Defendant Detective **Brian Arias** testified under oath at the preliminary hearing in this matter. Among other things, Defendant Detective **Brian Arias** testified about his search of Mr. Martinez' electronic devices. Defendant Detective **Brian Arias** made misrepresentations to the Court as to what was recovered from Mr. Martinez' phone. Upon information and belief, these were intentional misrepresentations.

147.   Defendant **Deena Pribble** inquired whether Defendant Detective **Brian Arias** "review[ed] any photographs on Pedro Martinez's cell phone." In response, Defendant Detective **Brian Arias** falsely testified that he recovered "several hundred images" from Mr. Martinez's cellphone. When asked whether the photographs found on his phone "had to do with school personnel having sex with children," Detective Arias responded, "there were several cartoon images of adults having sex with children." He continued, "[t]here were several images of Disney characters having sex with each other; several cartoon images of adults having sex; sodomy. . . there was a few images that I remember – that stood out was – it was two cartoon images of prepubescent females; one of them masturbating an adult male's penis. And there was another one where a male juvenile, prepubescent, was having sexual intercourse with an adult female." When the Court inquired seeking clarification as to the images recovered from the phone, Detective Arias testified, "There was just the pictures of – I mean, there was so many pictures. . . As far as cartoons, I remember there was a cartoon image of adults having, like, an orgy with children." In fact, no such images were recovered from Mr. Martinez' phone. Upon information and belief, Defendant Detective **Brian Arias** committed perjury and Defendant **Deena Pribble** suborned such perjury.

**Other Instances of Prosecutorial Misconduct**
**Committed By Defendant Deena Pribble During Trial**

148.   Both prior to and during the criminal trial, Defendant **Deena Pribble** committed numerous acts of prosecutorial misconduct. These included the following:

   o   Defendant **Deena Pribble** withheld *Brady* evidence;
   o   Defendant **Deena Pribble** refused to produce information concerning her January 30, 2019 meeting at her office with parents/guardians of both named complaining witnesses and individuals who had denied abuse.

Prior to the meeting, law enforcement officers informed these parent/guardians that, during this meeting, they would be instructed what to do and not do and what to say and not say. Based on Defendant **Deena Pribble**'s representation to the Court that the meeting was a "meet and greet" and nothing more, the Court denied Mr. Martinez' Motion to Compel production of the list of attendees at that meeting;

o Defendant **Deena Pribble** refused to produce information related to her communications with Defendant **Paul Matiasic** before and during the criminal trial;

o I.R. testified during trial that Defendant **Paul Matiasic** and "Daniella" (the individual retained by Defendant **Paul Matiasic** to convince the six-year-old I.R. that he had been touched by Mr. Martinez) helped him to remember that he was abused by Mr. Martinez. On information and belief, Defendant **Deena Pribble** and Defendant **Paul Matiasic** discussed these therapy sessions prior to I.R.'s testimony, and Defendant **Deena Pribble** did not disclose these statements;

o Defendant **Deena Pribble** moved to exclude exculpatory evidence that rebutted her claims of learned behavior. Defendant **Deena Pribble** argued that I.R. was abusing his brother, including inserting items in his anus, as a result of Mr. Martinez' actions from late August 2018 to January 2019. Defendant **Deena Pribble** subsequently moved to exclude evidence which established that I.R. was engaged in this behavior well prior to encountering Mr. Martinez;

o Defendant **Deena Pribble** argued during trial that images from the Cellebrite report, accessed in July 2018 (prior to the events at issue) including cartoon porn and bestiality images, established Mr. Martinez's propensity to molest children. Defendant **Deena Pribble** was aware that these hundred plus images were viewed for a mere five minutes, with

images being seen for less than two seconds each, that was a result of a
bing-search for "cartoon porn" made five months before school began
and before Mr. Martinez could have come into contact with the
complaining witnesses.

o During trial, DDA Pribble intentionally presented unnoticed expert
testimony, through IT tech Stephen Cvengros, that the carton images
linked to web searches on the Cellebrite report demonstrated Mr.
Martinez' prurient, deviant nature, knowing that Stephen Cvengros was
an IT expert with no forensic, medical, psychological, or clinical training;

o Defendant **Deena Pribble** attempted to render material defense witness
Magdalena Serna "unavailable" as a trial witness by raising Ms. Serna's
potential criminal prosecution based on I.R.'s and his mother's
allegations of physical abuse against her. Defendant **Deena Pribble**
claimed that based on criminal exposure, Ms. Serna would have no
choice but to assert her Fifth Amendment privilege and thus would be
unavailable to testify. It is prosecutorial misconduct for the prosecutor to
render an essential witness unavailable by threat of criminal prosecution
and then refuse to grant witness immunity.[6]

o Defendant **Deena Pribble** attempted to preclude the use of sworn
deposition testimony during defense impeachment on the basis that the
District Attorney's Office was not present at the depositions;

o Defendant **Deena Pribble** refused to or could not provide the identity of
the law enforcement officer who collected X.M.'s clothing and
underwear for DNA testing. The results pointed to Mr. Martinez'

---

[6] Under these circumstances, if the prosecution does not grant witness immunity, the Court must
order the defendant acquitted. *People v. Masters*, (2016) 62 Cal.4th 1019, 1051-1052. Upon
information and belief, Defendant **Deena Pribble** abandoned this argument when it became clear
that a judgment of acquittal was warranted.

innocence. Defendant **Deena Pribble** then moved to exclude the testing results on the basis that defense could not establish chain of custody.

o In an effort to present misinformation to the jury, Defendant **Deena Pribble** falsely asked one witness, Dana A., a Maple Elementary School teacher, why her trial testimony contradicted her deposition testimony. It did not. Defendant **Deena Pribble** went so far as to falsely misrepresent to that witness, before the jury, what the witness had stated in her deposition testimony.

### The Jury Acquits Mr. Martinez of All Charges

149.   Despite the lack of evidence and SBCSD's abhorrent investigation, the SBCDA proceeded to trial against Mr. Martinez. The trial took place at the Joshua Tree Courthouse and lasted approximately 3.5 months, commencing on August 29, 2023 and ending on December 11, 2023. Mr. Martinez faced:

o four counts of lewd and lascivious acts with a child under 14 years of age in violation of Penal Code section 288(a) (each count carried a potential life sentence);

o two counts of intercourse or sodomy with a child 10 years old or younger in violation of Penal Code section 288.7(a) (each count carried a potential life sentence);

o four counts of oral copulation or sexual penetration with a child 10 years old or younger in violation of Penal Code section 288.7(b) (each count carried a potential life sentence); and

o one count of distributing or showing pornography to a minor in violation of Penal Code section 288.2(a)(1).

150.   The Court dismissed the pornography count mid-trial as no evidence related to that count had been presented.

151.   On December 11, 2023, the jury acquitted Mr. Martinez on all Counts.

152.   Mr. Martinez was released from custody that evening.

153.   Mr. Martinez had spent almost five years in custody awaiting trial, with no legitimate evidence against him. Defendants Detective **Josette Tracy** and Defendant Detective **Brian Arias**, with the support of Defendant **Deena Pribble,** presented falsified evidence against him during the preliminary hearing and criminal trial, and still he was acquitted by a jury.

154.   During the five years that Mr. Martinez was in custody, Mr. Martinez had been falsely labeled a child molester, and missed holidays, birthdays, milestones in his children's lives, his brother's funeral, and the love and companionship of his wife, Ms. Martinez.

155.   During the five years that Mr. Martinez was in custody, Ms. Martinez missed sharing holidays, birthdays, milestones in his children's lives, and the love and companionship of her husband.

## FEDERAL CLAIMS

### COUNT I

**42 U.S.C. § 1983 Claim for Deprivation of Liberty Without Due Process of Law and Violation of Right to A Fair Trial Under the Fourteenth Amendment Based on Fabrication of False Evidence and The Withholding Of Evidence Against Defendant Detective Josette Tracy And Defendant Detective Brian Arias**

156.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

157.   Defendants fabricated false evidence of Martinez's guilt, thereby violating Martinez's right to a fair trial and causing him to be deprived of his liberty without due process of law. Defendants caused this false evidence to be used against Mr. Martinez in his prosecution and at trial and failed to disclose to either the prosecution or defense that this evidence was false and fabricated.

158.   Among this fabricated evidence were false statements by Defendant Detective **Brian Arias**, made under oath and to the Court, that Mr. Martinez had images of child pornography and other salient matter "stored on his phone."

159.   The criminal case was brought without any reliable evidence. Additional evidence against him was false evidence fabricated by Defendant Detective **Brian Arias** of which, upon information and belief, Defendant Detective **Josette Tracy** was or should have been aware. This was done with the knowledge and support of Defendant **Deena Pribble**.

160.   The foregoing acts and omissions were deliberate, reckless, wanton, cruel, motivated by evil motive or intent, done in bad faith, or involved callous indifference to Mr. Martinez' federally and state protected constitutional rights. These acts were perpetrated while Defendants were acting in their capacities as employees or agents of the County of San Bernardino including Defendant San Bernardino County Sheriff's Department and Defendant San Bernardino County District Attorney's Office, and under color of state law. No reasonable officer would have believed this conduct was lawful in 2019, 2020, 2021, 2022, or 2023.

161.   As a direct and proximate result of Defendants' actions, Mr. Martinez was wrongly arrested, detained, and charged with child sexual assault; and prosecuted, while being forced to experience almost five (5) years in custody awaiting the completion of trial, and suffered the other grievous injuries and damages set forth above.

## COUNT II

**42 U.S.C. § 1983 Claim for Deprivation of Liberty Without Due Process of Law and Violation of Right to A Fair Trial Under the Fourteenth Amendment Based on Withholding Material Exculpatory and Impeachment Evidence Against Defendant Detective Josette Tracy, Defendant Detective Brian Arias And Defendant Deena Pribble**

162.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

163.   Defendants fabricated false evidence of Martinez' guilt, suppressed legitimate evidence of Mr. Martinez' innocence, and intentionally refused overwhelming

evidence that both undermined any evidence of guilt against Mr. Martinez, thereby violating Martinez' right to a fair trial and causing him to be deprived of his liberty without due process of law.

164.  These Defendants knowingly further caused false evidence to be used against Mr. Martinez in his prosecution and at trial and failed to disclose to the defense that this evidence was false and fabricated, causing Mr. Martinez to be deprived of his liberty without due process of law.

165.  Among this fabricated evidence were false statements by Defendant Detective **Brian Arias**, made under oath and to the Court, that Mr. Martinez had images of child pornography and other salient matter "stored on his phone."

166.  Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** deprived Mr. Martinez of his right to a fair trial by withholding material exculpatory and impeachment evidence from the defense in violation of the Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, including:

167.  That Mr. Martinez only viewed images that were not – as Defendants alleged – child pornography, for less than two seconds each over five months prior to the alleged assaults.

168.  The criminal case against Mr. Martinez was weak, and the only evidence against him were the bizarre, fantastical, impossible claims of Ms. Serna that were easily ascertainable to be untrue and the false evidence fabricated by Defendants.

169.  Defense Counsel presented Defendants with overwhelming evidence that undermined the baseless allegations levied against Mr. Martinez. These included records from the Department of Child and Family Services, family court records, dependency court records, and arrest reports which Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** either refused to view or did view and maintained that they did not do so.

170.   The foregoing acts and omissions were deliberate, reckless, wanton, cruel, motivated by evil motive or intent, done in bad faith, or involved callous indifference to Mr. Martinez's federally protected constitutional rights. These acts were perpetrated while Defendants were acting in their capacities as employees or agents of the County of San Bernardino and under color of state law. No reasonable officer in 2019, 2020, 2021, 2022, or 2023 would have believed the foregoing conduct was lawful.

171.   As a direct and proximate result of Defendants' actions, Mr. Martinez was wrongly arrested, detained, and charged with multiple counts of child sexual assault; prosecuted, forced to wait almost five (5) years in custody to be acquitted at trial, and suffered the other grievous injuries and damages set forth above.

## COUNT III

**42 U.S.C. § 1983 Claim for Malicious Prosecution and Violation of The Fourth and Fourteenth Amendments Against Defendant Detective Josette Tracy, Defendant Detective Brian Arias and Defendant Deena Pribble**

172.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

173.   Defendants Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** caused criminal proceedings to be brought against Martinez without probable cause and without any reasonable belief in guilt. Martinez is completely innocent of all charges that were levied against him. As Defendants knew, the sole basis for the criminal action against Mr. Martinez was the false evidence that Defendants fabricated or otherwise relied on, knowing, or should have known, that such evidence was fabricated. No reasonable officer in 2019, 2020, 2021, 2022, or 2023 would have believed that fabricated evidence provided probable cause to continue with a prosecution, and no reasonable officer

in 2019, 2020, 2021, 2022, or 2023 would have believed continuing with such a prosecution was justified.

174.   The criminal proceedings against Mr. Martinez were initiated and continued with malice. Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** caused the charges against Mr. Martinez to be filed by knowingly concealing exculpatory evidence and otherwise engaging in wrongful and bad faith conduct that caused the initiation and continuation of the legal proceedings against Mr. Martinez when they knew there was no probable cause.

175.   Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** initiated and/or continued the prosecution of the action against Mr. Martinez for the purpose of denying Mr. Martinez' constitutional rights, including his right to be free from unreasonable searches and seizures, and his right to not be deprived of liberty without due process of law.

176.   As a direct and proximate result of Defendants' actions, Mr. Martinez was wrongly charged and prosecuted, for almost five years, with multiple counts of child sexual assault; incarcerated for almost five (5) years, and suffered the other grievous injuries and damages set forth above.

177.   The criminal proceedings against Mr. Martinez terminated in his favor. On December 11, 2023, following almost five years of incarceration, a jury acquitted Mr. Martinez of all counts.

## COUNT IV

### 42 U.S.C. § 1983 Claim Against Defendant Detective Brian Arias and Defendant Detective Josette Tracy for False Imprisonment

178.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

179.   Subsequent to the arrest of Mr. Martinez, Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy** were provided with information – DCFS records; videos (and associated transcripts) of depositions of Ms. Serna from the related action; family court records, dependency court records, and arrest reports. This evidence established that the allegations relied on by these officers when they arrested Mr. Martinez were false. Additionally, Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** were provided with the following:

- SART reports that found no findings of injury on either complaining witness;
- CSI reports on the blood and semen analyses of the janitor's closet where multiple regular assaults were alleged to have taken place, finding no presence of blood or semen;
- DNA reports finding none of Mr. Martinez's DNA on the clothing of either complaining witness;
- video footage establishing that Mr. Martinez was never alone during a school day with either complaining witness or other children; and
- a Cellebrite report establishing that:
  - no pornographic videos were stored on Mr. Martinez' iPad or phone, as had been alleged by Ms. Serna; and
  - no photos of children were stored on Mr. Martinez's iPad or phone as had been alleged by Ms. Serna.

180.   Simply put, these Defendants were provided with evidence substantiating that the claims of Ms. Serna – upon which they based their arrest and prosecution – were false.

181.   As a result of the arrest of Mr. Martinez and the high-profile nature of the arrest, Defendant Deputy **Johnathan Womelsdorf**, Defendant Detective **Brian**

**Arias,** and Defendant Detective **Josette Tracy** received accolades and promotions from the SBCSD.

182.    Defendant Detective **Brian Arias**, Defendant Detective **Josette Tracy,** and Defendant **Deena Pribble** had wrongly informed parents that their children had been raped by Mr. Martinez.

183.    Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** had learned of the coercive nature of Defendant Deputy **Johnathan Womelsdorf**'s interview of X.M.

184.    Rather than accept such evidence and recommend that the prosecution cease, Defendant Detective **Brian Arias**, with the knowledge and support of lead detective **Josette Tracy** and defendant **Deena Pribble,** fabricated evidence that Mr. Martinez stored pornographic images on his phone.

185.    Defendant Detective **Brian Arias** gave false testimony under oath during a preliminary hearing and at trial that Mr. Martinez stored "hundreds of" pornographic images on his phone.

186.    These Defendants attempted to secure a wrongful conviction, knowing of Mr. Martinez' innocence, to preserve the integrity of their failed investigation, to protect each other's reputations, and to avoid confessing to the parents of other children that their representations that the children had been raped by Mr. Martinez were false.

187.    In so doing, they subjected Mr. Martinez to a continued prosecution and prolonged false imprisonment.

188.    The above actions constitute a false imprisonment, commencing, at the latest, shortly after the evidence above became apparent.

189.    As a direct and proximate result of Defendants' actions above, Mr. Martinez wrongly continued to be charged with multiple counts of child sexual assault and prosecuted, resulting in his false arrest for at least approximately four years, and

making Mr. Martinez suffer the other grievous injuries and damages set forth above.

## COUNT V

### 42 U.S.C. § 1983 Civil Rights Conspiracy Claim Against Defendant Detective Josette Tracy, Defendant Detective Brian Arias, Defendant Deputy Johnathan Womelsdorf
### Defendant Deena Pribble and Defendant Does 6-10

190. Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

191. Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, Defendant Deputy **Johnathan Womelsdorf,** Defendant **Deena Pribble** and others yet unknown agreed among themselves and others, to act in concert to deprive Mr. Martinez of his clearly established constitutional rights as protected by the Fourth and Fourteenth Amendments, including his right not to be deprived of liberty without due process of law and to be free from illegal seizure.

192. As described in detail above, in furtherance of the conspiracy, Defendant Detective Josette **Tracy**, Defendant Detective **Brian Arias**, Defendant Deputy **Johnathan Womelsdorf**, Defendant **Deena Pribble** and Defendants **DOES 6-10** and others engaged in and facilitated numerous overt acts in furtherance of the conspiracy, including but not limited to, the following misconduct:

    a. Defendants, including but not limited to Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, Defendant Deputy **Johnathan Womelsdorf** and Defendant **Deena Pribble** and Defendants **Does 6-10** acted in concert to either not consider or keep from the jury the overwhelming evidence of factual innocence that had been provided to them;

    b. Defendants, including but not limited to Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, Defendant Deputy **Johnathan Womelsdorf** and Defendant **Deena Pribble**, and Defendants **Does 6-10**

acted in concert to fabricate statements including that images of child pornography and cartoon images of pornography were stored on Mr. Martinez' phone. They also acted in concert to fabricate police reports falsely representing images of child pornography and cartoon images of pornography were stored on Mr. Martinez' phone.

193.   No reasonable officer in 2019, 2020, 2021, 2022, or 2023 would have believed this conduct was lawful.

194.   As a direct and proximate result of Defendants' actions, Mr. Martinez was wrongfully, continually detained and charged with multiple counts of child sexual assault and prosecuted, incarcerated for almost 5 years, and suffered the other grievous injuries and damages set forth above.

**COUNT VI**

**42 U.S.C. § 1983 Supervisory Liability Claim**
**Against Defendant Detective Josette Tracy**

195.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

196.   On every case, the lead detective was part of the investigation. Upon information and belief, detectives never worked by themselves.

197.   Upon information and belief, Defendant Detective **Josette Tracy** took part in every aspect of the investigation.

198.   Upon information and belief, Defendant Detective **Josette Tracy** along with the rest of the team, would attend team meetings, go over the case, and give their input about what should be done next.

199.   Upon information and belief, Defendant Detective **Josette Tracy** would review the detectives' reports and approve warrants before they went to the SBCDAO.

200.   Upon information and belief, Defendant Detective **Josette Tracy**'s role was to make sure that the detectives completed investigations thoroughly, that the

paperwork was done properly, and that any procedures that were required throughout the investigation were completed and properly documented. Defendant Detective **Josette Tracy** intentionally and/or recklessly failed to supervise Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf**.

201. Upon information and belief, Defendant Detective **Josette Tracy**'s failure to supervise Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf** caused them to violate Mr. Martinez' constitutional right to due process and a fair criminal proceeding.

202. It was reasonably foreseeable that Defendant Detective **Josette Tracy**'s failure to supervise Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf** would cause them to violate Mr. Martinez' constitutional right to due process and a fair criminal proceeding.

203. Defendant Detective **Josette Tracy** knew or reasonably should have known that her failure to supervise Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf** would result in a violation of Mr. Martinez' constitutional right to due process and a fair criminal proceeding.

204. There is no evidence that Defendant Detective **Josette Tracy** was disciplined in any way after she admitted at Mr. Martinez's trial that she never reviewed the coercive interview of X.M. performed by Defendant Deputy **Johnathan Womelsdorf**.

205. There is no evidence that Defendant Detective **Josette Tracy** was disciplined in any way after she knowingly allowed Defendant Detective **Brian Arias** to give false testimony during the preliminary hearing.

206. Defendant Detective **Josette Tracy** condoned the violations of Martinez' constitutional right to due process and a fair criminal proceeding by not imposing any disciplinary consequences on Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf** for the acts described above. To the contrary, Defendant Detective **Josette Tracy** admitted that she never reviewed the work of

Defendant Detective **Brian Arias** and Defendant Deputy **Johnathan Womelsdorf** and testified at trial that any worked performed by a law enforcement officer with the SBCSD was acceptable by virtue of the mere fact that he/she was a law enforcement officer with the SBCSD.

207.    Defendant Detective **Josette Tracy**'s misconduct was objectively unreasonable and was undertaken intentionally, maliciously, and/or willfully, and/or in reckless disregard and indifference to Mr. Martinez' clearly established constitutional rights.

208.    As a proximate, direct, and foreseeable consequence of being arrested and incarcerated for almost five years, Mr. Martinez has suffered personal physical injury, physical sickness, emotional trauma, loss of consortium and loss of liberty in each year from January of 2019 through December of 2023, as well as other damages to be determined at the trial of this matter.

## COUNT VII

### 42 U.S.C. § 1983 Supervisory Liability Claim
### Against Defendants DOES 1 - 5

209.    Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

210.    Mr. Martinez' wrongful arrest, incarceration, prosecution, and trial was caused by the unconstitutional action and inaction of **SBCSD** supervisors **Defendants DOES 1-5**, acting in their individual capacities and under color of law.

211.    Because of **DOES 1-5's** failure to supervise, discipline, or train Defendant Deputy **Jonathan Womelsdorf**,  Defendant Detective **Brian Arias** and/or Defendant Detective **Josette Tracy**, Mr. Martinez was deprived of his clearly established rights under the Fourth and Fourteenth Amendments. No reasonable officer in 2019, 2020, 2021, 2022, and/or 2023 would have believed this conduct was lawful.

212.   Defendants **DOES 1-5** knowingly refused to take steps to terminate the wrongful prosecution of Mr. Martinez, which they knew or should have known had been initiated based on the coerced, fabricated, and false evidence and with willful blindness to, or intentional disregard for, the overwhelming exculpatory evidence that (a) was available to them at all times; and (b) was provided to them by Mr. Martinez's Defense Counsel. As a result, Defendants **DOES 1-5** knew or reasonably should have known that Mr. Martinez' constitutional rights to be free from unreasonable seizure and not to be deprived of liberty without due process of law would be violated.

213.   Defendants **DOES 1-5** culpably failed to adequately train, supervise, or control their subordinates, Defendant Deputy **Jonathan Womelsdorf**,  Defendant Detective **Brian Arias** and/or Defendant Detective **Josette Tracy**, who obtained coerced, fabricated, and/or falsified evidence and fabricated evidence and suppressed exculpatory information and either refused to view, or did view and then chose to maintain that they had not viewed, the overwhelmingly substantial evidence that (a) was available to them at all times; and (b) was provided to them by Mr. Martinez' Defense Counsel.

214.   Defendants **DOES 1-5** violated Martinez' constitutional rights by acquiescing in the deprivation of Mr. Martinez' constitutional rights by their subordinates, and by showing a reckless and callous indifference to Mr. Martinez' rights.

215.   Defendants **DOES 1-5** failure to train, supervise, or control their subordinates, their indifference to the actions of their subordinates, and their indifference to Mr. Martinez' rights, encouraged and permitted their subordinates to fabricate inculpatory evidence and to fail to document and to disclose exculpatory evidence.

216.   The actions and omissions of **DOES 1-5** in their individual capacities, caused Mr. Martinez to be wrongly arrested, detained, and charged with child sexual assault; prosecuted, and incarcerated for almost five years while awaiting trial, and suffered the other grievous injuries and damages set forth above.

**COUNT VIII**

**42 U.S.C. § 1983 Claim for Failure to Intervene Against
Defendant Deputy Jonathan Womelsdorf, Defendant Detective Josette Tracy,
Defendant Detective Brian Arias, Defendant Deena Pribble and DOES 6-10**

217.  Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

218.  By their conduct and under color of state law, Defendants, acting within the scope of their employment, had opportunities to intervene on behalf of Mr. Martinez to prevent his malicious prosecution and deprivation of liberty without due process of law, but with deliberate indifference, declined to do so. No reasonable officer in 2019, 2020, 2021, 2022, or 2023 would have believed this conduct was lawful. Defendants' failures included but are not limited to:

    a.  Failing to intervene to prevent or stop the fabrication and testimony by Defendant Detective **Brian Arias** that "hundreds of [pornographic] images were "stored on [Mr. Martinez'] phone, made under oath and during the preliminary hearing;

    b.  Refusing to view the Department of Child and Family Services records that were both available to Defendants and subsequently provided to Defendants by Mr. Martinez' Defense Counsel, several months before trial began;

    c.  Refusing to review the interview of X.M. negligently performed by Defendant Detective **Johnathan Womelsdorf**;

    d.  Refusing to interview I.R, and simply relying on the fantastical allegations of Ms. Serna purporting to relay what I.R. said;

    e.  Allowing the CAC interview of I.R. to take place without police intervention;

    f.  Allowing the CAC interview of X.R. to take place without police intervention;

g. Refusing to view or consider (or read the transcripts of) the depositions of Ms. Serna taken during the related civil trial that established the unreliability of Ms. Serna's allegations;

h. Failing to intervene to prevent or stop the suggestion or coercion used to obtain statements by I.R.;

i. Failing to intervene to prevent or stop the suggestion or coercion used to obtain statements by X.M.; and

j. Failing to intervene to prevent or stop the concealment and suppression of exculpatory evidence.

219. These Defendants' failures to intervene violated Mr. Martinez' clearly established constitutional right not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable officer or investigator 2018, 2019, 2020, 2021, 2022, or 2023 would have believed that failing to intervene to prevent Defendants from fabricating inculpatory evidence, concealing and withholding exculpatory evidence, or causing Mr. Martinez to prosecuted without probable cause, were lawful.

220. These Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Martinez' injuries. Defendants knew, or should have known, that their conduct would result in Martinez' wrongful prosecution and incarceration.

221. As a direct and proximate result of Defendants' failure to intervene, Mr. Martinez was wrongly arrested, detained, and charged with multiple counts of child sexual assault, and prosecuted, resulting his incarceration for nearly five years, and making Mr. Martinez suffer the other grievous injuries and damages set forth above.

1

**COUNT IX**

2

3

**42 U.S.C. § 1983 Failure to Train Claim Against**
**Defendant San Bernardino County and**
**Defendant San Bernardino County Sheriff's Department**

4

5

222.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

6

7

223.   Defendant **County of San Bernardino** and the **SBCSD** failed to adequately train officers with the **SBCSD** on forensic child interviews. During the criminal trial, Defendant Deputy **Johnathan Womelsdorf** and others testified that – aside from a specialized training afforded to a small group of detectives and not utilized by Defendant **SBCSD** for the initial investigation of this matter – the general training provided to officers (including Defendant Deputy **Johnathan Womelsdorf**) on forensic child interviews consisted of part of a one-day course lasting three to four hours. This training was wholly inadequate and expressed a deliberate indifference for the potential harm to anyone against whom an allegation of child sexual assault was levied.

8

9

10

11

12

13

14

15

16

224.    Defendants **County of San Bernardino** and **SBCSD** were aware that this one-day course, lasting three to four hours, provided an insufficient basis on which to allow officers to perform forensic interviews of children and could lead to unfair prosecutions of innocent people such as Mr. Martinez.

17

18

19

20

225.   Defendants **County of San Bernardino** and **SBCSD** were aware that such training was deficient and could lead to the constitutional violations complained of herein and evinced a deliberate indifference to anyone against whom a claim of child sexual assault had been levied.

21

22

23

24

226.   The dangers flowing from the inadequate three to four-hour training on forensic child interviews was foreseeable, and Defendant **County of San Bernardino** and Defendant **SBCSD** should have anticipated the need for proper training in such circumstances.

25

26

27

28

227.   The failure of Defendant **County of San Bernardino** and Defendant **SBCSD** to properly train law enforcement officers such as Defendant Deputy **Johnathan Womelsdorf** led to the arrest and wrongful prosecution of Mr. Martinez and the constitutional violations complained of herein.

## COUNT X
### 42 U.S.C. § 1983 Claim for Investigatory Bias
### Against Defendant Deena Pribble

228.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

229.   Defendant **Deena Pribble** organized a meeting at the District Attorney's office on or about January 30, 2019. At that meeting, Defendant **Deena Pribble** coordinated the attendance of Ms. Serna, the officers investigating the case, as well as the parents/guardians of children, even though those children (S.S. and A.M.) who had denied claims of sexual assault.

230.   Upon information and belief, Defendant **Deena Pribble** advised the parents/guardians that their children had been sexually assaulted by Mr. Martinez.

231.   Upon information and belief, Defendant **Deena Pribble** advised the parents/guardians as to "what to do" and "what to not do" when approached by Defense Counsel or their agents, in order to fortify the baseless allegations levied against Mr. Martinez and interfere with any investigation made on his behalf.

232.   Upon information and belief, Defendant **Deena Pribble** attempted to keep the existence of the meeting out of the defense's knowledge by:

   (a) refusing to keep lists of attendees;

   (b) refusing to disclose the existence of the meeting;

   (c) refusing to record the meeting;

   (d) refusing to record what statements were made at the meeting; and,

subsequently

(e) claiming to a court in session in the criminal matter against Mr. Martinez that:

> (1) evidence of the meeting was not subject to discovery under Marcy's Law (which was false); and

> (2) that a pre-trial judge assigned to the case had issued a ruling that evidence of the meeting was not subject to discovery under Marcy's Law (which was false).

233.   Defense Counsel was only able to learn of the meeting in 2023 while reviewing a discovery dump that included phone calls made to parents/guardians by SBDCA officers who were working with Defendant **Deena Pribble** to organize the meeting.

234.   Upon information and belief, Defendant **Deena Pribble** chose to not investigate the matter and preclude the defense from doing so by informing parents/guardians of children who had denied claims of abuse from being able to acquire more exculpatory information.

235.   Upon information and belief, during that meeting (and prior), Defendant **Deena Pribble** made an affirmative choice to <u>not</u> do any of the following:

> (a)   Investigate or research Ms. Serna, despite the fact that she was the only person claiming that assaults had been made or that I.R. had ever alleged such assaults took place;

> (b)   Interview either I.R. or X.M.;

> (c)   Review the CAC interview of either I.R. or X.M.;

> (d)   Request or review any of the DCFS records, of which she had access, to determine whether or not Ms. Serna had made similar allegations before (Ms. Serna had made more than 10);

> (e)   Review the alleged disclosure interview of X.M. performed by Defendant Jonathan Womelsdorf; and

(f)    Consider the results of the two SART exams (of I.R. and X.M.) that resulted in "no findings" of assault.

236.   Upon information and belief, this refusal to investigate the overwhelming evidence substantiating Mr. Martinez' claims of innocence, and efforts to suppress additional exculpatory evidence was because the ABC news video --  produced at the direction of Ms. Serna and Defendant **Paul Matiasic** -- and the press release made by the SBCSD made the matter a high-profile case that Defendant **Deena Pribble** wanted to use to advance her personal career goals at the expense of Mr. Martinez' constitutional rights.

237.   Mr. Martinez suffered the extreme damages identified herein as a result of Defendant **Deena Pribble**'s outrageous conduct described herein.

## CALIFORNIA LAW CLAIMS

## COUNT XI

**California State Law Claim Under Cal. Civ. Code Section 52.1 Against Defendant Deputy Johnathan Womelsdorf, Defendant Detective Brian Arias and Defendant Detective Josette Tracy for Unlawful Coercion of Witness Statements To Produce False Testimony**

238.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

239.   On or about January 22, 2019, Defendant Deputy **Johnathan Womelsdorf** unlawfully coerced six-year-old witness X.M., who had repeatedly denied any abuse by Mr. Martinez, into giving affirmative answers to suggestive questions related to claims of sexual assault by Mr. Martinez.

240.   Upon information and belief, during the CAC interview of witness I.R. that took place on or about January 24, 2019, following repeated denials of claims of sexual abuse by Mr. Martinez, Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** instructed the forensic interviewer to coerce the six-year

old witness X.M., who had repeatedly denied any abuse by Mr. Martinez, into giving one affirmative answer to a suggestive question provided by Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** related to claims of sexual assault by Mr. Martinez.

241.   As a direct and proximate result of Defendants' coercive actions, Mr. Martinez was wrongly arrested, detained, and charged with multiple counts of child sexual assault, and prosecuted, resulting in his incarceration for nearly five years, and making Mr. Martinez suffer the other grievous injuries and damages set forth above.

## COUNT XII

### California State Law Claim Under Cal. Civ. Code Section 52.1 Against Defendant Detective Brian Arias and Defendant Detective Josette Tracy For False Imprisonment

242.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

243.   Subsequent to the arrest of Mr. Martinez, Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** were provided with information – DCFS records and videos (and associated transcripts) of depositions of Ms. Serna from the related action, family law records, dependency court records, and arrest reports. This evidence established that the allegations relied on by these officers when they arrested Mr. Martinez were false. Additionally, Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** were provided with (1) SART reports that found no findings of injury on either complaining witness; negative CSI reports including blood and semen analysis of the janitor's closet were multiple regular assaults were alleged to have taken place; DNA reports finding none of Mr. Martinez's DNA on the clothing of either complaining witness; video footage that established that Mr. Martinez was never alone during a school day with either

complaining witness or other children; and a Cellebrite report establishing that no pornographic videos were stored on Mr. Martinez' iPad or phone, and that he had viewed the cartoon images of which links were found in the search history of the phone for mere seconds, viewing over 100 images in less than a five-minute period, by tapping on arrows provided by search engine, Bing, as a result of a lawful internet search, and that no images of children were stored on Mr. Martinez' phone.

244.    Simply put, these Defendants were provided with evidence substantiating that the claims of Ms. Serna – upon which they based their arrest and prosecution – were false.

245.    As a result of the arrest of Mr. Martinez and the high-profile nature of the arrest, Defendant Deputy **Johnathan Womelsdorf**, Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy** received accolades and promotions from the SBCSD.

246.    Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** had informed parents/guardians of several children that their children had been raped by Mr. Martinez and were unwilling to inform these parents that they had been wrong.

247.    Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** had learned of the coercive nature of Defendant Deputy **Johnathan Womelsdorf**'s interview of X.M. and rather than evaluating it, chose to never review it.

248.    Defendant Detective **Brian Arias**, with the knowledge and support of lead detective **Josette Tracy**, fabricated evidence that Mr. Martinez stored pornographic images on his phone.

249.    Defendant Detective **Brian Arias** then gave false testimony under oath during a preliminary hearing and at trial that Mr. Martinez stored "hundreds of" pornographic images on his phone.

250.   These Defendants attempted to secure a wrongful conviction, knowing of Mr. Martinez' innocence, to preserve the integrity of their failed investigation, to protect each other's reputations, and to avoid confessing to the parents of other children that their representations that the children had been raped by Mr. Martinez were false.

251.   In so doing, they subjected Mr. Martinez to a continued prosecution and prolonged false imprisonment.

252.   The above actions constitute a false arrest, commencing, at the latest, shortly after the evidence above became apparent.

253.   As a direct and proximate result of Defendants' actions above, Mr. Martinez was wrongly incarcerated for almost five years and made to suffer the other grievous injuries and damages set forth above.

# COUNT XIII

**California State Law Claim for Intentional Infliction of Emotional Distress Against Defendant Detective Brian Arias, Defendant Detective Josette Tracy and Defendant Deena Pribble**

254.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

255.   Subsequent to the arrest of Mr. Martinez, Defendant **Deena Pribble,** Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy** were provided with information – DCFS records and videos (and associated transcripts) of depositions of Ms. Serna from the related action, family court records, dependency court records, and arrest reports. This evidence established that the allegations relied on by these Defendants when they arrested Mr. Martinez were false. Additionally, Defendant **Deena Pribble,** Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy** were provided with the following:

- SART reports that found no findings of injury on either complaining witness;
- CSI reports on the blood and semen analyses of the janitor's closet where multiple regular assaults were alleged to have taken place, finding no presence of blood or semen;
- DNA reports finding none of Mr. Martinez's DNA on the clothing of either complaining witness;
- video footage establishing that Mr. Martinez was never alone during a school day with either complaining witness or other children; and
- a Cellebrite report establishing that:
  - no pornographic videos were stored on Mr. Martinez' iPad or phone, as had been alleged by Ms. Serna; and
  - no photos of children were stored on Mr. Martinez's iPad or phone as had been alleged by Ms. Serna.

256.   Simply put, these defendants were provided with evidence substantiating that the claims of Ms. Serna – upon which they based their arrest and prosecution – were false.

257.   As a result of the arrest of Mr. Martinez and the high-profile nature of the arrest, Defendant Deputy **Johnathan Womelsdorf**, Defendant Detective **Brian Arias,** and Defendant Detective **Josette Tracy** received accolades and promotions from the SBCSD.

258.   Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** had informed parents/guardians of several children that their children had been raped by Mr. Martinez.

259.   Defendant Detective **Brian Arias** and Defendant Detective **Josette Tracy** had learned of the coercive nature of Defendant Deputy **Johnathan Womelsdorf**'s interview of X.M.

260.   Rather than accept such evidence and take efforts to terminate the wrongful prosecution, Defendant Detective **Brian Arias**, with the knowledge and support of lead detective **Josette Tracy**, fabricated evidence that Mr. Martinez stored pornographic images on his phone.

261.   Defendant Detective **Brian Arias** then gave false testimony under oath during a preliminary hearing and at trial that Mr. Martinez stored "hundreds of" pornographic images on his phone.

262.   This perjury was made with the consent and knowledge of falsity of Defendant **Deena Pribble**.

263.   These Defendants attempted to secure a wrongful conviction, knowing of Mr. Martinez' innocence, to preserve the integrity of their failed investigation, to protect each other's reputations, and to avoid confessing to the parents/guardians of other children that their representations that the children had been raped by Mr. Martinez were false.

264.   In so doing, they subjected Mr. Martinez to a continued prosecution and prolonged false imprisonment.

265.   At the latest, shortly after the evidence that Mr. Martinez did not and could not have committed the acts alleged by Ms. Serna became apparent to Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble**, the acts committed by Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, and Defendant **Deena Pribble** to continue the prosecution without grounds constitutes Intentional Infliction of Emotional Distress to Mr. Martinez.

266.   The conduct of Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias,** and Defendant **Deena Pribble** described above was extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Mr. Martinez.

267.   Mr. Martinez suffered severe and/or extreme emotional distress as a result of the extreme and outrageous conduct described above.

268.   Mr. Martinez' injuries were actually and proximately caused by the outrageous conduct of Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias** and Defendant **Deena Pribble** described above.

## COUNT XIV

**California State Law Claim for Intentional Infliction of Emotional Distress Against Defendant Deena Pribble and Defendant Paul Matiasic**

269.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

270.   Subsequent to the arrest of Mr. Martinez, as part of the investigation into the related civil case, Defendant **Deena Pribble**, acting on behalf of Defendant **Paul Matiasic**, and Defendant **Paul Matiasic**, became aware of exculpatory evidence, including DCFS records, videos (and associated transcripts) of depositions of Ms. Serna from the related action (where Defendant **Paul Matiasic** was present), family court records, dependency court records, and arrest reports.

271.   This evidence established that the allegations against Mr. Martinez were false.

272.   Defendant **Deena Pribble**, acting on behalf of Defendant **Paul Matiasic**, and Defendant **Paul Matiasic**, were provided with:

- SART reports that found no findings of injury on either complaining witness;
- CSI reports on the blood and semen analyses of the janitor's closet where multiple regular assaults were alleged to have taken place, finding no presence of blood or semen;
- DNA reports finding none of Mr. Martinez's DNA on the clothing of either complaining witness;
- video footage establishing that Mr. Martinez was never alone during a school day with either complaining witness or other children; and

- a Cellebrite report establishing that:
  - no pornographic videos were stored on Mr. Martinez' iPad or phone, as had been alleged by Ms. Serna; and
  - no photos of children were stored on Mr. Martinez's iPad or phone as had been alleged by Ms. Serna.

273.    Simply put, Defendant **Deena Pribble**, acting on behalf of Defendant **Paul Matiasic**, and Defendant **Paul Matiasic**, were provided with evidence substantiating that the claims of Ms. Serna – upon which they based their arrest and prosecution – were false.

274.    Upon information and belief, Defendant **Paul Matiasic** was aware that the allegations were false, tampered with evidence – namely, the minds of six-year-old children including I.R., S.S., and A.M, who had denied abuse, and used therapists for the express purpose of convincing these six-year-old children that they were abused.

275.    As was known to Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, Defendant **Paul Matiasic** had expended great resources pursuing what he knew were baseless claims, and therefore took efforts to convert the baseless claims into ones where monetary gains could be achieved by tampering with evidence -- namely, the minds of six-year-old children including I.R., S.S., and A.M, who had denied abuse, and used therapists for the express purpose of convincing these six-year-old children that they were abused.

276.    Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, and Defendant **Paul Matiasic** attempted to secure a wrongful conviction, knowing of Mr. Martinez' innocence, to preserve the lucrative nature of the related civil claim.

277. In so doing, Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, and Defendant **Paul Matiasic** subjected Mr. Martinez to a continued prosecution and prolonged false imprisonment.

278. At the latest, shortly after the evidence above became apparent to Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, and Defendant **Paul Matiasic**, their conduct amounted to Intentional Infliction of Emotional Distress to Mr. Martinez.

279. The conduct of Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, and Defendant **Paul Matiasic** described above was extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Mr. Martinez.

280. Mr. Martinez suffered severe and/or extreme emotional distress as a result of the extreme and outrageous conduct described above.

281. Mr. Martinez' injuries were actually and proximately caused by the outrageous conduct of Defendant **Deena Pribble**, working in her individual capacity to benefit Defendant **Paul Matiasic**, and Defendant **Paul Matiasic** described above.

### COUNT XV

**California State Law Claim For**
**Malicious Prosecution and Related Evidence Tampering**
**Against Defendant Paul Matiasic**

282. Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

283. Following his self-serving production of, and participation in, the ABC news video that aired on or about the day of Mr. Martinez' arrest, and his solicitation of potential clients with the assistance of Ms. Serna, Defendant **Paul Matiasic**, upon information and belief, became aware of the groundless nature of Ms. Serna's accusations.

284. At the time, upon information and belief, Defendant **Paul Matiasic** had expended resources to pursue a civil action against Mr. Martinez and his employer arising out of Ms. Serna's (and not I.R.'s) claims against Mr. Martinez. To preserve the expended funds and in an effort to make substantial sums, Defendant **Paul Matiasic** tampered with exculpatory evidence against Mr. Martinez – that evidence being the minds of impressionable six-year-old children. To that end, Defendant **Paul Matiasic** flew S.S. and A.M. from San Bernardino County to San Francisco to visit a therapist with the intention of changing the memories of those children, who had previously denied any allegations of assault, and planting false memories that such assault transpired. This transpired.

285. Upon information and belief, Defendant **Paul Matiasic** was in contact with Defendant **Deena Pribble** during the criminal prosecution of Mr. Martinez and, *inter alia*, provided Defendant **Deena Pribble** with transcripts and other materials that would assist Defendant **Deena Pribble** in hopes of getting a conviction.

286. Upon information and belief, Defendant **Paul Matiasic** provided a coerced statement of I.R. to Defendant **Deena Pribble** purporting that I.R., who had previously denied all allegations of abuse by Mr. Martinez, suddenly remembered that Mr. Martinez "touched his penis"*,* while knowing that this statement was false and wholly inconsistent with the allegations purportedly made by witness I.R. and relayed by Ms. Serna, with the instruction to not produce such statements to Defense Counsel.

287. Upon information and belief, Defendant **Paul Matiasic** was in contact with Defendant **Deena Pribble** during the criminal prosecution of Mr. Martinez and, *inter alia*, provided Defendant **Deena Pribble** with the theory that Defendant **Paul Matiasic** himself would assert during the related civil trial – namely that a large "cover-up" took place by the Hesperia Unified School District to hide Mr. Martinez' alleged misdeeds.

288.    Upon information and belief, Defendant **Paul Matiasic**, took these actions to obtain a conviction in the criminal matter with the intent to use that conviction to benefit him in the related civil action.

289.    As a direct and proximate result of Defendant **Paul Matiasic**'s actions, Mr. Martinez continued to be prosecuted for multiple counts of child sexual assault for a period of almost five years, resulting in his incarceration for nearly five years, and making Mr. Martinez suffer the other grievous injuries and damages set forth above.

## COUNT XVI

### California State Law Claim for Malicious Prosecution
### Against Defendant Deena Pribble and Defendant Paul Matiasic

290.    Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

291.    Upon information and belief, Defendant **Deena Pribble** was in contact with Defendant **Paul Matiasic** throughout the criminal prosecution of Mr. Martinez.

292.    Upon information and belief, Defendant **Deena Pribble** acquired both materials (such as transcripts from the civil action) and guidance from Defendant **Paul Matiasic** throughout the criminal prosecution of Mr. Martinez.

293.    Upon information and belief, Defendant **Deena Pribble**, after learning of the overwhelming exculpatory evidence that established that the allegations of Ms. Serna could not have happened, used her role as a Deputy District Attorney with the County of San Bernardino to continue the action, in order to financially benefit Defendant **Paul Matiasic**, I.R., and perhaps others.

294.    Upon information and belief, in so doing, Defendant **Deena Pribble** abdicated her role as a prosecutor, abdicated her role in her official capacity, and served to benefit Defendant **Paul Matiasic**, I.R., and perhaps others, rather than the State of California.

295.   As a direct and proximate result of Defendant **Deena Pribble**'s wrongful actions, made in her personal and not official capacities, Mr. Martinez continued to be prosecuted for multiple counts of child sexual assault for a period of almost five years, resulting in his incarceration for nearly five years, and making Mr. Martinez suffer the other grievous injuries and damages set forth above.

## COUNT XVII

**California State Law Claim on Behalf of Both Pedro Martinez and Juliette Mondragon De Martinez for Loss of Consortium Against All Defendants**

296.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

297.   Plaintiffs Mr. and Ms. Martinez had been married for 22 years when Mr. Martinez was arrested on or about January 22, 2019.

298.   Defendants caused the criminal action against Mr. Martinez despite learning that he did not commit the crimes for which he was being charged. Plaintiffs Mr. and Ms. are still married.

299.   Defendants, through negligence or intentional misconduct, caused Mr. Martinez to continue to be wrongfully prosecuted for crimes he did not commit after, upon information and belief, being aware that he did not commit such crimes.

300.   Defendants fabricated evidence and suppressed exculpatory evidence causing Mr. Martinez to be incarcerated for almost five years. Had it not been for Defendants' negligence or intentional misconduct, Mr. Martinez would not have been incarcerated almost five years.

301.   During Mr. Martinez' almost five-year period of incarceration, both Mr. and Ms. Martinez lost the consortium of one another, were unable to live together as spouses and enjoy each other's emotional support and companionship. Defendants' misconduct proximately caused this loss.

**COUNT XVIII**

**Claim under California State Law, Cal. Gov. Code § 815.2, For *Respondeat Superior* and Vicarious Liability against Defendant County of San Bernardino**

302.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

303.   Mr. Martinez and Ms. Martinez suffered the aforementioned injuries as a proximate result of the misconduct of the individual Defendants.

304.   During all relevant times, Defendants were employees or contractors of the County of San Bernardino.

305.   Defendants' tortious conduct was undertaken while carrying out routine investigative functions. The conduct was reasonably expected by, and in fact foreseen by, Defendants' employer.

306.   The acts and omissions of Defendants that proximately caused Plaintiffs' injuries were within the scope of Defendants' employment with the San Bernardino County Sheriff's Department and the County of San Bernardino.


**COUNT XIX**
**California State Law Claim Under Cal. Gov. Code § 825**
**Against Defendant County of San Bernardino**

307.   Plaintiffs hereby incorporate each of the allegations of this Complaint as if fully set forth herein, and further allege as follows:

308.   California law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

309.   At all relevant times, the Defendants were employees or contractors of the San Bernardino County Sheriff's Department and the County of San Bernardino who acted within the scope of their employment in committing the misconduct described herein.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## JURY DEMAND

Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Martinez and Ms. Martinez demand judgment jointly and severally against Defendants as follows:

A. That the Court award compensatory damages to them and against the Defendants, jointly and severally, in an amount to be determined at trial but that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this action;

B. That the Court award punitive damages to them, and against Defendant Detective **Josette Tracy**, Defendant Detective **Brian Arias**, Detective Deputy **Johnathan Womelsdorf** , Defendant **Deena Pribble,** working in her individual capacity to benefit Defendant **Paul Matiasic,** Defendant **Paul Matiasic**, and Defendant **DOES 1-10**, in an amount to be determined at trial, that will deter such conduct by these Defendants in the future;

C. For a trial by jury;

D. For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and pursuant to Cal. Civ Code § 52.1(i)  *et seq.* for applicable state law claims; and

E. For any and all other relief to which they may be entitled.


Dated: December 2, 2024

Respectfully submitted,

By: _____

Ian Wallach / Law Office of Ian Wallach, P.C.
*Attorneys for Plaintiffs*,
Pedro Martinez and Juliette
Mondregon de Martinez

61